```
          UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF MISSISSIPPI
                 EASTERN DIVISION
```

ROBERT LEWIS                                            PLAINTIFF

VS.                                     CIVIL ACTION NO. 4:05CV15LN

CNA GROUP LIFE ASSURANCE CO.                            DEFENDANT

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant CNA Group Life Assurance Company (CNA) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and the cross-motion of plaintiff Robert Lewis for summary judgment. Each party has responded to the motion of the other and the court, having considered the memoranda of authorities, along with the administrative record, concludes that CNA is entitled to summary judgment and that plaintiff's complaint is due to be dismissed.

Plaintiff filed this suit seeking to recover contractual and punitive damages on account of defendant's termination of long-term disability benefits under a Long-Term Disability Plan sponsored by plaintiff's former employer, Baker Hughes, Inc.[1] Plaintiff had been employed by Baker Hughes as a truck driver from 1976 until December 9, 1997, when he sustained a back injury, a L5-S1 disc protrusion, for which he underwent surgery on December

---

[1] The case was filed in state court, but timely removed by CNA on the basis of federal question jurisdiction, inasmuch as the subject plan is governed by the Employee Retirement Income Security Act (ERISA).

10, 1997. Plaintiff was placed on short-term disability for six months, following which he was approved for long-term disability, effective June 28, 1998.

Under the terms of Baker Hughes' long-term disability plan, benefits were payable for the first twelve months of a claimed "total disability" if the claimant was disabled from performing his "own occupation," which in plaintiff's case was that of a truck driver. After that initial twelve-month period, however, the definition of "total disability" changed, making benefits payable if the claimant remained disabled from "any occupation" for which he was or could reasonably be qualified by education, training or experience.[2] CNA paid disability benefits to

---

[2] The policy stated as follows:

For purposes of Long Term Disability Coverage, a Disability (i) which prevents a Long Term Disability Participant from engaging in any occupation or employment for which he is qualified, or may reasonably become qualified, based on his training, education or experience, (ii) for which the Long Term Disability Participant is under the regular care and personal attendance of a Physician for treatment aimed at maximizing the Participant's recovery and return to work, and (iii) during which the Long Term Disability Participant does not engage in any occupation or perform any work for compensation or profit other than Rehabilitative Employment; provided, however, that during the first 12 months of a Disability, Total Disability means a Disability which prevents a Long Term Disability Participant from engaging in his regular occupation and which meets the foregoing requirements under clause (ii) and (iii). Notwithstanding the foregoing, no Disability shall constitute a Total Disability unless the foregoing conditions are met for the first time with respect to such Disability at a date

plaintiff during the initial period of disability from his "own occupation," and continued thereafter for more than four years to pay him for disability benefits under the "any occupation" disability definition until, by letter dated August 19, 2003, it informed plaintiff that his benefits would be terminated effective September 7, 2003. At that time, defendant advised that "the medical and vocational documentation in your file does not support that you remain disabled from any occupation at this time."[3] Plaintiff sought reconsideration of CNA's decision, and was given thirty days to submit additional information for CNA's consideration. His attorney timely submitted additional medical documentation, but following a review of the materials provided by plaintiff, CNA advised that the decision to deny benefits remained unchanged. The file was then forwarded for review by the Appeals Committee, which, by letter dated December 3, 2003, informed plaintiff that his appeal was denied.

The issue presented by this case, as the parties agree, is whether CNA abused its discretion in terminating long-term disability payments to plaintiff. See Albert v. Life Ins. Co. of North America, 2005 WL 3271283, *4 n.3 (5th Cir. Dec. 2, 2005)

---

upon which such individual is a Long Term Disability Participant in the Plan.

[3] In his motion, plaintiff argues that CNA's termination letter did not meet the notice requirements of the plan, in that it did not adequately inform him

3

(where plan gives the administrator discretion to make claim determinations, "the court must apply an abuse of discretion standard in reviewing the administrator's decision," which standard requires that the administrator's factual determinations be supported by substantial evidence) (citing <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989)).[4]  The parties disagree as to the proper scope of the court's inquiry.  Plaintiff submits that the court is free to consider all available evidence bearing on his claimed disability, whereas CNA maintains the court's review is limited to the administrative record.  CNA is clearly correct.  <u>See</u> <u>Vega v. National Life Ins. Services, Inc.</u>, 188 F.3d 287, 299 (1999) (in making determination whether administrator abused its discretion, the court is "constrained to the evidence before the plan administrator").  Plaintiff argues that while the court is generally limited to the administrative record, the court's review in this case ought not be so limited because CNA failed to conduct a thorough investigation of the medical records and did not make a good faith effort to obtain plaintiff's medical records.  He argues, in fact, that the administrator abused its discretion in failing to obtain all of the necessary medical information before

---

[4]     The Plan gives CNA discretionary authority to "review, determine, and authorize payment of request for benefits under the Plain and to direct and supervise the payment of benefits under the Plan. . . ."

rendering its decision. The Fifth Circuit, however, has rejected this same argument, making it clear that it is not the administrator's burden to prove that it conducted a reasonable investigation but rather it is the claimant's duty to provide the administrator with evidence he considers pertinent to his claim. The court stated:

> There is no justifiable basis for placing the burden solely on the administrator to generate evidence relevant to deciding the claim, which may or may not be available to it, or which may be more readily available to the claimant. If the claimant has relevant information in his control, it is not only inappropriate but inefficient to require the administrator to obtain that information in the absence of the claimant's active cooperation.
> Instead, we focus on whether the record adequately supports the administrator's decision. In many cases, this approach will reach the same result as one that focuses on whether the administrator has reasonably investigated the claim. The advantage to focusing on the adequacy of the record, however, is that it (1) prohibits the district court from engaging in additional fact-finding and (2) encourages both parties properly to assemble the evidence that best supports their case at the administrator's level.

Vega, 188 F.3d at 298. Thus, the court declared, "[W]e will not permit the district court or our own panels to consider evidence introduced to resolve factual disputes with respect to the merits of the claim when that evidence was not in the administrative record." Vega, 188 F.3d at 299.

The Fifth Circuit has described the abuse of discretion standard in the following way:

> Under the abuse of discretion standard, "federal courts owe due deference to an administrator's factual

5

> conclusions that reflect a reasonable and impartial
> judgment."  In applying this standard of review, we
> consider whether the administrator acted arbitrarily or
> capriciously.  <u>Dowden v. Blue Cross & Blue Shield of
> Tex., Inc.</u>, 126 F.3d 641, 644 (5th Cir. 1997).  We have
> stated that "[a]n arbitrary decision is one made without
> a rational connection between the known facts and the
> decision or between the found facts and the evidence."
> <u>Id.</u> (quoting <u>Bellaire Gen. Hosp. v. Blue Cross Blue
> Shield of Mich.</u>, 97 F.3d 822, 828 (5th Cir. 1996)).
> Ultimately, our review for abuse of discretion "need not
> be particularly complex or technical; it need only
> assure that the administrator's decision fall somewhere
> on a continuum of reasonableness--even if on the low
> end."  <u>Vega v. Nat'l Life Ins. Servs., Inc.</u>, 188 F.3d
> 287, 297 (5th Cir. 1999) (en banc).

<u>Horton v. Prudential Ins. Co. of America</u>, 51 Fed. Appx. 928 (5th Cir. 2002) (additional citations omitted).

Having reviewed the administrative record in this case, and bearing in mind the deferential standard of review, the court cannot conclude that CNA abused its discretion in its decision to terminate payment of further disability benefits to plaintiff.

Prior to its August 2003 decision to discontinue long-term disability payments to plaintiff, CNA obtained a Functional Capacities Evaluation (FCE) of plaintiff in July 2003 from the Rehabilitation Division of South Central Regional Medical Center, and obtained, as well, medical records from Dr. David McKellar, who was known by CNA to have been plaintiff's primary physician for plaintiff's back injury and resulting back pain.

Dr. McKellar's records indicated, and his office confirmed, that he had not seen plaintiff since July 2002, when plaintiff had been administered a steroid injection in the lumbar area for pain.

Prior to that, plaintiff had received regular steroid injections for pain under Dr. McKeller's care, yet following July 2002, he sought no further treatment from Dr. McKellar.

The July 2003 FCE report provided to CNA noted that during the two days of testing, plaintiff had "demonstrated uncooperative behavior and limited himself unnecessarily 18 out of 27 items." Despite this, the examiner reported that plaintiff had the ability to stand on a rotational basis for 67-100% of an eight-hour day; to sit for 67-100% of an eight-hour day; a standing tolerance of 6-33% of an eight-hour day; and a stair climbing ability of 6-33% of an eight-hour day. A prior FCE performed in 1999 had also concluded that plaintiff could sit/stand for most or all of a work day.

In informing plaintiff of the decision to deny payment of further disability benefits, CNA referenced these facts, along with the fact that on April 21, 2003, plaintiff had reported that he was exercising on a daily basis, walking for twenty to thirty minutes and riding a stationary bike for fifteen to twenty minutes. He also had reported that he was able to drive, and cook meals. It cited these facts, along with the fact of plaintiff's high school education and basic computer knowledge, in support of its conclusion that,

> [B]ased upon your functionality and vocational background, . . . there is no medical evidence to support current inability to perform gainful, alternative occupations. Samples of occupations include

>   but are not limited to:  Service Dispatcher, Service
>   Order Technician, Car Rental Agent, Recruiter, and
>   Telephonic Customer Service Representative.

Following receipt of CNA's initial notification of termination of benefits, plaintiff, through his attorney, did forward additional materials for CNA's consideration, consisting primarily of medical records from Dr. Ken Grafton, which reflected a diagnosis of and continuing treatment since August 2002 for type 2 diabetes with sensory neuropathy and a fatty liver, and which noted that in an August 4, 2003 office visit, plaintiff's back had a full range of motion with reports of muscle spasms in the lumbar area, and he was negative for straight leg raise.  Included, as well, were medical records from Dr. Richard Galloway of the Hattiesburg Clinic Endocrinology Department, who had seen plaintiff regularly throughout 2003 for treatment of his diabetes.

After reviewing these additional materials, CNA maintained its termination decision, stating:

>   [T]he additional medical evidence does not support a
>   level of impairment precluding your client from
>   performing the alternative occupations listed in my
>   original letter dated 8/19/03.  In addition, the
>   additional medical evidence does not support a
>   deterioration in your client's level of function from
>   the two previous Functional Capacity Evaluations
>   completed on 6/18/99 and 7/29/03.

With his appeal of this decision, plaintiff apparently provided no additional medical records, but he did submit a handwritten note from Dr. Grafton, dated November 7, 2003, in which he recited:

8

> It is my opinion that Robert M. Lewis is disabled due to his chronic low back pain with previous history of back surgery. He also has degenerative arthritis of the lumbar vertebrae.

The CNA Appeals Committee acknowledged the medical records furnished by plaintiff, but found they did not support continued disability:

> We do not have any other findings during the time period in question that would indicate your client's inability to perform the duties of the occupations suggested by the Vocational Consultant. The Functional Capacity Evaluation does [not] indicate that your client is physically unable to perform those or similar type jobs. It was noted that your client does have the ability to alternate sit/stand throughout an 8 hour workday. Therefore, based upon all the findings in your client's file there are no supporting documents indicating his inability to perform any occupation. Your client's physician's [sic] have not included any restrictions/limitations nor were there any findings including [sic] in the records to support any that would not allow a return to work as noted.

As noted by CNA in its termination decisions, results from both the 1999 and July 2003 FCEs indicated that plaintiff was able to alternate sitting and standing for an entire workday. Moreover, as noted by CNA, nothing in any of the medical records obtained by CNA or furnished by plaintiff was to the contrary. That is, nothing in the medical records, or at least not those relevant to the time of the decision, and particularly none to which plaintiff has directed the court's attention, reflected any specific limitation on plaintiff's activities, and certainly nothing that would undermine CNA's conclusion that plaintiff was physically able to at least perform sedentary work.

9

Prior to July 2002, plaintiff had been regularly seeing Dr. McKellar for pain management, but as of the date of the initial termination decision had not seen Dr. McKellar for over a year. While he was under the care of Dr. Grafton during the latter part of 2002 and throughout 2003, Dr. Grafton's records clearly disclose that plaintiff's chief complaints during that time related to his diabetes, which has not been suggested by Dr. Grafton to have any bearing on his ability to work. Indeed, Dr. Grafton opined on November 7, 2003 that plaintiff was disabled "due to his chronic low back pain," not due to diabetes or any related condition.

Of course, the court is cognizant of Dr. Grafton's opinion, provided to CNA via plaintiff's counsel in November 2003, that plaintiff was disabled due to his low back pain. However, while Dr. Grafton's medical records do include a reference to plaintiff's experiencing muscle spasms in his lower back, Dr. Grafton's medical records do not reflect low back pain as a basis for plaintiff's seeking medical care or as a basis for medical care provided by Dr. Grafton. In short, his opinion, provided after CNA had already refused to reconsider its termination decision, is merely conclusory, and unsupported by medical evidence and as such, does not undermine CNA's decision. Cf. Gooden v. Provident Life & Accid. Ins. Co., 250 F.3d 329, 333 (5th Cir. 2001) (holding that letter from physician stating that

10

claimant was disabled "does not undermine Provident's decision, as it was written after Gooden learned he was being terminated, and was unaccompanied by medical evidence indicating that Gooden's condition changed since the last time Dr. Causey had seen Gooden").[5]

Plaintiff appears to take the position that irrespective of whether CNA's conclusion that he had the physical capability to perform sedentary work is sustainable, it is nevertheless apparent that CNA abused its discretion by failing to take into account whether plaintiff's "education, training and experience" limited his ability to perform other jobs, that is, sedentary jobs.  In this vein, plaintiff suggests that CNA abused its discretion by terminating benefits without first obtaining reports from vocational experts as to whether or not he could engage in any occupation or employment for which he was qualified or to which he might reasonably become qualified, based upon his training, education or experience.  However, CNA had no duty to obtain such reports.  In <u>Duhon v. Texaco, Inc.</u>, 15 F.3d 1302, 1309 (5th Cir. 1994), the Fifth Circuit held "it was not an abuse of discretion

---

[5] The court notes that in August 2004, more than eight months after CNA made its final decision to terminate benefits, plaintiff, through counsel, unilaterally submitted additional medical evidence, followed by a letter from Dr. Grafton, dated September 3, 2004, in which he undertook to limit plaintiff's functional and physical capabilities.  The letter and medical evidence, having been submitted long after the appeal was denied, is not properly considered part of the administrative record.

11

for the plan administrator to conclude that [a claimant] was capable of performing some type of occupation without obtaining the opinion of a vocational rehabilitation expert." The court observed:

> The plan only required a finding that Duhon could perform "any job for which he is, or may become, qualified by education, training, or experience." Given this undemanding language and the medical evidence in this case, the plan administrator could competently determine disability without vocational testimony. Texaco's disability benefits plan is not a form of employment insurance; it was not necessary under this plan that the administrator "insure the availability of an alternative job" for Duhon before terminating his benefits.

Id. CNA cannot otherwise be found to have abused its discretion based on its reasonable conclusion that sedentary jobs can be performed by an individual with a high school diploma and basic computer skills.

In sum, based on the administrative record, the court concludes that CNA was warranted in concluding that plaintiff was able to perform sedentary work, and as well in its decision that there were sedentary jobs for which he was qualified (or could become qualified).[6] What is perhaps most vexing to court in

---

[6] The court recognizes that by decision rendered October 22, 1999, plaintiff was found disabled by the Social Security Administration commencing December 8, 1997. While that fact may be relevant, it is hardly dispositive. See Horton v. Prudential Ins. Co. of America, 51 Fed. Appx. 928 (5th Cir. 2002) ("[W]hile an ERISA plan administrator might find a social security disability determination relevant or persuasive, the plan administrator is not bound by the social security determination.") (citations omitted). In any event, in the court's view, CNA's ultimate

analyzing the decision at issue is the fact that there appears to have been little appreciable difference in plaintiff's education, training and experience and in his functional capacity between 1999, when long-term disability benefits were being paid, and 2003, when CNA determined to discontinue those benefits on the basis that plaintiff was no longer disabled.  However, the proper focus of the court's inquiry is on whether the available evidence in the record at the time of CNA's decision supported that decision; and it does.  In other words, it is not incumbent on CNA to demonstrate that plaintiff's condition improved between the time his claim for long-term disability benefits was approved and the time they were thereafter discontinued.  Rather, it need only appear from the record that at the time benefits were discontinued, the evidence supported a conclusion that the plaintiff did not meet the policy definition of "totally disabled."  See Ellis v. Liberty Life Assurance Co. of Boston, 394 F.3d 262, 274 (5th Cir. 2005) ("All that ERISA requires is that

---

conclusion, some five-and-a-half years after plaintiff first became disabled, that his prior disability ended sometime in or before August 2003, is not necessarily inconsistent with the Social Security disability determination.  CNA, like the Social Security Administration, did determine that plaintiff was disabled effective December 1997, and implicitly was of the opinion that he remained totally disabled from employment until 2003.  Unlike the Social Security Administration, however, CNA revisited the issue and concluded that plaintiff was able to return to some manner of work.  Even, however, had the two reached different conclusions on the same facts, that would not impugn the validity of CNA's decision, for even rational minds can reach different conclusions on the same facts.

13

substantial evidence support a plan fiduciary's benefits decision–whether it be to deny benefits initially or to terminate benefits previously granted–when, as here, the plan fiduciary is vested with the discretion to determine, <u>inter</u> <u>alia</u>, both initial and continued eligibility for benefits.").

Based on the foregoing, the court is of the opinion that CNA is entitled to summary judgment, and its motion will therefore be granted.  Plaintiff's motion will be denied.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 7th day of February, 2006.

                                             /s/ Tom S. Lee
                                            UNITED STATES DISTRICT JUDGE